**GENUINE PARTS COMPANY,**
a Corporation

v.

**FEDERAL TRADE COMMISSION, Paul
Rand Dixon, Philip Elman, Mary Gardi-
ner Jones, A. Everett MacIntyre, and
James M. Nicholson.**

Civ. A. No. 12030.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 20, 1970.

Alston, Miller & Gaines, Atlanta, Ga., and Washington, D. C., for plaintiff.

Slaton Clemmons, Asst. U. S. Atty., J. B. Truly and Chas. C. Moore, Jr., Federal Trade Commission, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Harland Leathers and Jess H. Rosenberg, Attys., Dept of Justice, for defendants.

## ORDER

EDENFIELD, District Judge.

This is an action for declaratory and injunctive relief in which Plaintiff Genuine Parts alleges that an "Order to File Special Report" which the Federal Trade Commission served upon it in December 1967 violates plaintiff's constitutional rights in that it is harassing, oppressive, and unreasonable, there having been no attempt by the Commission either to focus the order's requirements upon information not otherwise available to the Commission or to bring the information sought within the scope and purpose of the investigation the Commission has undertaken. Plaintiff alleges that much of the information sought by means of the Special Report in question is already in the Commission's possession as a result of two official investigations of plaintiff which have been undertaken by agencies of the United States since 1962 and as a result of a subpoena duces tecum which was served upon plaintiff simultaneously with the order herein complained of and with which plaintiff already has complied.

■■■ Genuine Parts is a Georgia corporation whose business is the sale of automotive replacement parts and related items. Pursuant to a resolution dated December 18, 1967, the Federal Trade Commission is engaged in a non-public investigation of Genuine Parts to determine whether or not there is reason to believe that Genuine Parts has acquired other corporations in violation of Section 7 of the Clayton Act and Section 5 of the Federal Trade Commission Act. In furtherance of this investigation the Commission, on December 28, 1967, issued to Genuine Parts the Special Order which is the subject matter of this suit. Plaintiff failed or refused to comply in full with the requirements of the Commission's order and a notice of default was served upon plaintiff's attorney on July 23, 1968. On August 14, 1968, the instant suit was filed and on August 21, 1968, before the 30-day period during which penalties may not be imposed had expired, this court issued an order staying accrual of the civil penalties provided for by Section 10 of the Federal Trade Commission Act (15 U.S.C. § 50), the stay of penalties has remained in effect throughout the protracted course of this litigation. At a hearing on November 4, 1959, plaintiff's objections to the Commission's order were argued and the court made tentative rulings on the enforceability of each challenged section of the order. In most instances the Commission's demands were either held to be enforceable in the form requested by the FTC or enforcement was conditioned upon a specific

limitation imposed by the court.[1] Following that hearing plaintiff was given an opportunity to present evidence on the question of burdensomeness with regard to the court's tentative rulings (plaintiff elected to do this in the form of an affidavit) and counsel for both sides reviewed the transcript and filed with the court their "Understandings" of the court's tentative rulings and objections thereto.

The case is now before the court for a final ruling on the enforceability of the challenged portions of the Order to File Special Report, viz., Specifications I, § B (in part); II §§ B, C, F; III, §§ D through I, and K, L, N; IV, §§ C through H; V, §§ A through K; and VIII, §§ A, B. In addition, the Commission contends that the response to VII, which Genuine Parts filed after the instant lawsuit began, is inadequate. Since most of plaintiff's objections to the specifications apply to several subparts, they will be discussed below according to the objections themselves rather than disposing of each specification individually.

■ (1) *Unavailability of necessary records.* Genuine Parts contends for the most part that it is impossible fully to comply with specifications which call for data relating to years prior to 1967 because the underlying records from which such data would have to be compiled have been destroyed.[2] Plaintiff cannot, of course, produce records which do not exist nor can it compile reports which require data from records which have been destroyed. Genuine Parts is, however, directed to supply the requested data for 1967; to the extent, if any, that the requested information is available for years prior to 1967 it must also be supplied, even if it is not in the exact form demanded.

■ (2) *Automotive parts, accessories, and equipment.* Several of the specifications call for information regarding sales of automotive parts, accessories, and equipment [3]—a term which Genuine Parts contends is too vague to be meaningful. For purposes of this Special Report the court construes the above term to apply to any product which is fastened or attached to an automobile and as such the demand for information is enforceable.

(3) *Franchise.* The term "franchise", which appears in several specifications (II, §§ C, F; III, § F) shall be given its ordinary meaning and "franchise operator" shall include anyone operating under a franchise or contract.

(4) *Customer.* The word "customer" as used in Specifications II, §§ E, F, applies to any individual who owns one or more outlets; if he owns several outlets he is still only a single customer for purposes of these questions.

(5) Under Specification III plaintiff has been ordered to give the approximate boundaries of each warehouse distributor's 1967 trade area (III, § K), and an estimate as to the distributor's estimated share during 1967 of all warehouse distribution sales of automotive parts (III, § L). To the extent that III, § K requests Genuine Parts to respond generally, giving only its best estimate of the area in which each warehouse traded, it must be answered; III, § L need not be answered unless there are in fact records available upon which to base such an estimate.

---

1. In enforcement proceedings brought by the Commission, the court unquestionably has authority to impose reasonable conditions and restrictions upon the production of data and documents which have been subpoenaed by the Commission. *See* Adams v. Federal Trade Comm'n, 296 F.2d 861, 870 (8th Cir. 1961), and cases cited in fn. 7 therein. It would appear that this same authority must necessarily exist when the party being investigated seeks judicial relief before the § 10 forfeitures begin to run, without waiting for the Commission to bring enforcement proceedings. *See* St. Regis Paper Co. v. United States, 368 U.S. 208, 226, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

2. Specifications II; III, §§ D, E, F; IV, §§ C, D. Specification III, § N is specifically excluded from this ruling.

3. Specifications II, §§ B, C; III, §§ E, F, G, L; IV, §§ D, E; V, § C.

(6) Specification III, § N, dealing with acquisitions by Genuine Parts, will be limited to transactions occurring since the beginning of 1950.

(7) Specification IV, § G, which requests information as to the maximum delivery distance of each of Genuine Parts' jobbers during 1967, is limited to a general request for the radius within which each store ordinarily delivers; Specification H is limited to data concerning stores established or acquired by Genuine Parts since the beginning of 1950.

(8) *Dependent jobbers.* Specification V requests information with regard to, *inter alia,* "dependent jobbers", which is defined to include any customer who had custody of merchandise consigned, leased or bailed to him by Genuine Parts. Counsel for plaintiff has informed the court that the only consignment arrangement in which Genuine Parts participated at that time was a consignment program for automobile batteries, and the parties have agreed that if Genuine Parts affirmatively represents in its response that the only consignment arrangement involving it and its jobbers was the battery program, and that such program was generally available to jobber customers, then Genuine Parts need not attempt to identify those jobbers who had batteries in their possession pursuant to the consignment program.

(9) Clause 5 of the introductory paragraph of Specification V will be enforced in the conjunctive sense but not in the disjunctive, i. e., it will not be enforced as "and/or" but only to the extent that both qualifications are present.[4]

(10) Specification V, §§ B, C, must be complied with insofar as sales figures are concerned but will be enforced as to percentage figures only to the extent that such figures are known to Genuine Parts; if the figures are not known the answer should so state.

(11) Specification V, § F need not be answered at the present time; if after Genuine Parts has answered V, § E the Commission still wishes to have an answer to V, § F, Genuine Parts must either provide the answer or, at Genuine Parts' option, permit the Commission to obtain the information from Genuine Parts' files.

(12) Specification V, § G can be answered giving the average interest rate and any aberrations therefrom, as to the various classes of indebtedness but need not specify the interest charged each customer listed in the answer to V, § A.

(13) Specifications V, § H and V, § I should be answered if Genuine Parts has the information in its files. It need not, however, survey all jobbers in order to obtain the information.

(14) Specifications V, § J and V, § K contain the word "value" which can be given either in terms of cost or market value provided it is clear which is being used.

(15) In Specification VIII, § A, the phrases "other relationship" and "affiliated in any way" are too broad and indefinite; this request will be enforced only to the extent that it requires Genuine Parts to report its ownership, financial connections, or the existence of a common officer or director relationship with any member or subsidiary of a member of National Automotive Parts Association. Specification VIII, § B will be enforced only to the extent that it requires answers as to the functions of each of the organizations named in answer to Specification VIII, § A, insofar as their relationships with Genuine Parts are concerned.

(16) Specification VII. The record shows that after this lawsuit was in-

4. (See p. 6.)

Clause 5 of Specification V requires certain information concerning customers whose store was purchased from Genuine Parts "and/or was subject to any kind of purchase or repurchase options in favor of Genuine Parts." As limited by the court this information must be supplied only if the store was purchased from Genuine Parts *and* was subject to an option.

stituted Genuine Parts responded to this specification. The Government now contends that compliance was only partial and asks this court to order full compliance. This question was not argued at the November 24th hearing but counsel for both sides have briefed it. The Government requests that Genuine Parts be required to base its answers on all of its records rather than only on records kept in the ordinary course of the company's business; that Genuine Parts treat suppliers of Belkamp, Inc., (of which Genuine Parts owns more than half the outstanding stock) as its own suppliers for purposes of answering this specification; that Genuine Parts report, in § D, any difference in functional discount dependent upon whether the merchandise purchased by Genuine Parts is to be sold at Genuine Parts' warehouse or at its wholly-owned jobber stores, or if there is no such difference specifically so state; that in answering §§ F and G Genuine Parts answer insofar as it has knowledge of such preferential services and allowances even though it has no control over them; and that Genuine Parts answer § I of the specification which it heretofore has completely ignored. The requests, as set forth above, do not appear to be overly broad or unreasonable and Genuine Parts is directed to comply therewith; if the information is not available or already has been supplied in full Genuine Parts should so state.

(17) *Confidentiality.* When Genuine Parts filed its Special Report with the Commission it indicated a willingness to answer Specification I, § B (identity of each shareholder who owns more than 1% of the company's stock) and III, § D (individual warehouses' dollar sales for the years 1963 and 1967) provided this information would be treated confidentially. In this lawsuit plaintiff has also requested that all information supplied to the Commission should, if it is not information generally available to the public, be accorded confidential treatment. Counsel for both sides

concede that the applicable statute requires the Commission to keep the information confidential until the public interest requires its disclosure. There is a dispute, however, as to whether the Commission should be permitted to use the confidential information in other judicial proceedings. The court now rules that any information which is required by this order to be furnished to the Commission shall be accorded confidential treatment if it is not generally available to the public; if the Commission determines that the public interest requires disclosure of any of the foregoing information the Commission shall give Genuine Parts sufficient notice of which information it intends to disclose to permit Genuine Parts to take whatever protective measures it deems necessary, such notice to be given at least ten days prior to disclosure. Nothing in this order shall be construed as prohibiting confidential information being used by the Commission to support a complaint against Genuine Parts.

As limited above the Special Order to Report does not seek information which is clearly irrelevant to the instant investigation and its demands are not harassing, oppressive, or unreasonable. Furthermore, the evidence presented by Genuine Parts to support its contention that compliance would be unduly burdensome addressed itself to the specifications set forth in the Federal Trade Commission's order, broadly interpreted, rather than to the order as limited above. The court concedes that compliance may be somewhat burdensome, but if the Commission were permitted to require only reports which impose no burden whatever upon the business which is being investigated its hands would be tied and the purposes of the Act too easily would be circumvented. We cannot conclude that Congress had any such intention.

Holding as we do that compliance with the Report will not be unduly burdensome, it follows that Genuine Parts MUST PROVIDE the information re-

quested by the Federal Trade Commission, SUBJECT to the limitations set forth in this order.

It is so ordered.